## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| MOON GROUP, INC., *et al.*[1] | Case No. 21-11140 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Obj. Deadline: At the hearing**<br>**Hearing Date: March 23, 2022 at 11:00 a.m. (ET)** |
| In re: | Chapter 11 |
| MOON NURSERIES, INC., | Case No. 21-11142 (CSS) |
| Debtor. | **Objection Deadline: At the hearing**<br>**Hearing Date: March 23, 2022 at 11:00 a.m. (ET)** |

### MOTION OF DON A. BESKRONE, TRUSTEE, FOR AN ORDER AUTHORIZING THE ENTRY INTO A POSTPETITION INSURANCE PREMIUM FINANCING AGREEMENT

Don A. Beskrone, the Chapter 11 Trustee (the "Chapter 11 Trustee") of the above-caption debtor Moon Nurseries, Inc. ("Nurseries"), and the Chapter 7 Trustee (the "Chapter 7 Trustee", and together in his capacity as Chapter 11 Trustee, the "Trustee") of Moon Group, Inc. ("Group"); Moon Landscaping, Inc. ("Landscaping"); Moon Site Management, Inc. ("Site Management"); Moon Wholesale, Inc. ("Wholesale"); and Rickert Landscaping, Inc. ("Rickert", and together with Group, Landscaping, Site Management, Wholesale and Rickert, the "Chapter 7 Debtors" – the Chapter 7 Debtors, together with Nurseries, the "Moon Debtors"), by and through

---

[1] The Debtors in the chapter 7 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Moon Group, Inc. (7484); Moon Landscaping, Inc. (3442); Moon Site Management, Inc. (0250); Moon Wholesale, Inc. (3232); and Rickert Landscaping, Inc. (3988). Debtor Moon Nurseries, Inc. (8411) remains a chapter 11 debtor. The Debtors' headquarters and mailing address is 145 Moon Road, Chesapeake City, MD 21915.

his undersigned proposed counsel, hereby submits this motion (the "Motion") for the entry of an order, under and pursuant to sections 105(a), 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001(c) and (d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the Trustee and/or the Moon Debtors, as the case may be, to enter into a postpetition insurance premium financing agreement (the "PFA") with FIRST Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A. ("FIRST"), (ii) approving the terms of the PFA, and (iii) granting FIRST a security interest in and lien on unearned premiums, return premiums, dividend payments and loss payments under the Policies (as defined below) with priority over any and all administrative expenses pursuant to 11 U.S.C. § 364(c)(1).  As set forth in greater detail below, the Trustee/Moon Debtors seek to enter into a PFA with FIRST to finance premiums on one or more insurance policies (the "Policies") effective as of March 4, 2022.  In support of this Motion, the Trustee respectfully states as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Trustee confirms his consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue of this case and this Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are Sections 105(a), 363 and 364 of the Bankruptcy Code, and Bankruptcy Rule 4001.

## BACKGROUND

### A.    General Background

4.      On August 12, 2021 (the "Petition Date"), the Moon Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court") commencing the above-captioned bankruptcy cases. The factual background regarding the Moon Debtors, including their respective business operations, capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in detail in the *Declaration of John Pursell, Jr. in Support of the Moon Debtors' First Day Motions* filed on August 13, 2021 (the "Pursell Declaration") [D.I. 12],[2] which is fully incorporated herein by reference.

5.      On August 30, 2021, the Office of the United States Trustee (the "United States Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee"). On February 24, 2022, however, the United States Trustee disbanded the Committee.  [D.I. 555].

6.      On February 9, 2022, the Court entered the *Order Regarding Debtor's Motion Converting Chapter 11 Cases to Cases Under Chapter 7* (the "Conversion Order") [Case No. 21-11140 (CSS), D.I. 530] for Group [Case No. 21-11140 (CSS)], Landscaping [Case No. 21-11141 (CSS)], Site Management, Inc. [Case No. 21-11143 (CSS)], Wholesale [Case No. 21-11144 (CSS)], and Rickert [Case No. 21-11145 (CSS)], which converted these specific cases to cases under chapter 7 effective as of February 11, 2022 at 5:00 p.m. (ET) (the "Conversion Date").

7.      On February 16, 2022, the United States Trustee filed the *Application of the United States Trustee for Entry of an Order Approving the Appointment of Don. A Beskrone as Chapter 11 Trustee in Moon Nurseries, Inc.* (the "Application for Appointment of Chapter 11

---

[2] Docket citations refer to case number 21-11140 (CSS).

Trustee") [Case No. 21-11142 (CSS); D.I. 15].  A subsequent order approving the Application

for Appointment of Chapter 11 Trustee was entered on February 17, 2022 [D.I. 17].

8.      On February 18, 2022, the Trustee filed the *Notice of Acceptance of Don. A.*

*Beskrone of Appointment as Chapter 11 Trustee in the Case of Moon Nurseries, Inc.* [Case No.

21-11142 (CSS); D.I. 18].

### B.      Cash Collateral and the DIP Facility

9.      On September 15, 2021, the Court entered that certain *Final Order Authorizing*

*the Debtors to Use Cash Collateral of Primary Lenders and Granting Adequate Protection for*

*Its Use* [D.I. 164], with respect to North Avenue Capital, LLC, Newtek Small Business Finance,

LLC and Kore Capital Corporation (collectively, the "Primary Lenders"), as primary secured

lenders of the Moon Debtors.

10.     On October 5, 2021, the Court entered that certain *Final Order Authorizing*

*Debtor-In-Possession Financing* (the "Final DIP Order") [D.I. 241] with respect to Legalist DIP

GP, LLC ("Legalist" or the "DIP Lender").  The Trustee understands the proceeds of the facility

provided pursuant to the Final DIP Order were used, in part, to refinance the prepetition credit

facility of Kore Credit Corporation.

11.     On account of the foregoing, the Trustee understands that the Primary Lenders

and the DIP Lender (either independently or together) assert, among other things, that all of the

Moon Debtors' assets are encumbered and that the *de minimus* amount of cash currently held by

the Trustee constitutes the secured lenders' cash collateral pursuant to sections 363(a) and

552(b)(2) of the Bankruptcy Code.  And given the state of the Moon Debtors' estates, the Trustee

cannot provide these lenders any additional financial adequate protection as may be required by

11 U.S.C. §§ 361, 363, and 364.

###### C.    The Trustee's Efforts Since His Appointment

12.    Since his appointment, the Trustee has undertaken an investigation of the Moon Debtors' businesses, assets and liabilities with the intent of preserving and maximizing value for the benefit of all creditors and stakeholders.  The Trustee (along with his proposed professionals) has undertaken a tour of the Moon Debtors' facilities in Chesapeake City, MD, met with current representatives of the Moon Debtors, interviewed various former estate professionals, conferred with the Moon Debtors' multiple lenders and commenced a "deep-dive" into the Moon Debtors to, among other things, understand their operations, assess assets and liabilities and gauge its financial wherewithal (or lack thereof).  The Trustee has also convened a number of calls with certain parties interested in acquiring the Moon Debtors assets -- in whole or in part.  Indeed, the Trustee has already received a number of letters of interest expressing nonbinding offers to purchase some or all of the Moon Debtors' assets.

13.    The Trustee has also had multiple discussions with the Moon Debtors' lenders (including certain of the Primary Lenders and the DIP Lender) concerning their willingness to fund a sale process by which the Moon Debtors' remaining assets can be monetized for the benefit of all stakeholders.  As reflected in the *Emergency Motion of Don A. Beskrone, Trustee, for Entry of an Order (I) Converting the Chapter 11 Case of Moon Nurseries, Inc. to a Case Under Chapter 7, (II) Authorizing the Trustee to Abandon Certain Property of the Debtors' Estates and (III) Granting Related Relief* [D.I. 572] (the "Motion to Convert/Abandon"); the Estates did not have the required insurance in place to properly administer these cases, and it appeared the lenders were unwilling to pay for insurance or otherwise fund sale process - thus prompting the Motion to Convert/Abandon.

14.      Nevertheless, since that time, these various lenders have changed course and have expressed a willingness to embark upon a sale process, and secure necessary insurance to preserve and safeguard the property of the Moon Debtors' estates.  Indeed, certain insurance policies under the Moon Debtors' Insurance Program (defined below) have been cancelled or are set to be cancelled in the near future.  As a result, the lenders recently wired funds to secure the PFA and secure insurance coverage, and the Trustee understands that the funds necessary to secure commercial general liability, workers' compensation and excess/umbrella insurance coverage has, in fact, been received.

### D.      The Moon Debtors' Insurance Program

15.      In connection with the operation of their businesses, the Moon Debtors have maintained numerous insurance policies and programs providing coverage for, among other things, the following:  general liability, automobile liability, workers' compensation, property and equipment, and excess liability (collectively, the "Insurance Programs").  The Moon Debtors' Insurance Programs have historically been maintained with several different insurance carriers.  *See Motion for Entry of an Order (I) Authorizing the Debtors to Continue Prepetition Insurance Coverage Policies and Practices; and (II) Directing Banks to Honor All Payments Related Thereto*, ¶¶7-8 [D.I. 10].  The Insurance Programs have been essential to the preservation of the value of the Moon Debtors' business property and assets, and continued insurance is necessary to the administration of these cases.  In many cases insurance coverage is required by the diverse regulations, laws, and contracts that govern the Moon Debtors' commercial activities.

16.      Moreover, section 1112(b)(4)(c) of the Bankruptcy Code provides that a "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for

mandatory conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(c).  Further, the

Guidelines of the Office of the United States Trustee for the District of Delaware require debtors

to maintain insurance coverage in their chapter 11 cases.  As such, for these cases to be

administered, the Trustee requires that appropriate insurance be in place.  FIRST has agreed to

finance the premium for the Policies pursuant to the terms and conditions set forth in the PFA, as

more particularly described below, all of which will allow for continuous insurance coverage of

the Moon Debtors' estates.

### E.    Terms of the PFA[3]

17.    The PFA (a true and correct copy of which is attached hereto as **Exhibit A**)

provides for a total cash down payment of $19,047.35 (the "Initial Payment") to the insurer or

agent, plus a total amount financed of $66,037.65 (the "Remaining Payments") at an annual

percentage rate of 4.550%, in nine (9) monthly payments in the amount of $7,477.33 each,

resulting in a total financing charge of $1,258.32.   The lenders have made the Initial Payment to

the insurer or broker to bind the Policies. The PFA covers financing for (i) workers'

compensation (Chesapeake Employers' Ins. Co.), and (ii) general liability Indian Harbor

Insurance Co.).

18.    In the PFA, the Moon Debtors, among other things, grant FIRST a first priority

lien on and security interest in the financed Policies, including all returned or unearned

premiums, all additional cash contributions or collateral amounts assessed by FIRST, any credit

generated by the Policies, any dividend payments and loss payments which reduce unearned

premiums under the Policies.  The PFA further provides that the Trustee/Moon Debtors appoint

FIRST as their attorney-in-fact, with full authority to cancel the Policies in the event of a default

---

[3] The summary descriptions of the terms of the PFAs contained herein is qualified in their entirety by the terms of the PFA itself, as attached hereto as **Exhibit A**.

in accordance with the terms of the Policies.  In the event that FIRST cancels any of the Policies, the unearned premiums that result from such cancellation are assigned to FIRST for credit against any balance due and owing to FIRST, with any excess portion thereof to be returned to the Trustee/Moon Debtors.

## **RELIEF REQUESTED**

19.    By this Motion, the Trustee seeks the entry of an order from this Court authorizing the Trustee/Moon Debtors to enter into the PFA with FIRST and approving the terms of the PFA.  Specifically, the Trustee/Moon Debtors seek authorization from the Court to pay the Initial Payment to FIRST or its agent, and to make the balance of the Remaining Payments to FIRST pursuant to the monthly payment schedule described above and set forth in the PFA.

20.    While the Moon Debtors previously received debtor in possession financing, the Trustee/Moon Debtors seek to minimize any additional strain placed upon the Moon Debtors' estates by up-front payments of their insurance costs.  Indeed, as noted above, the Moon Debtors lack the liquidity needed to fund their insurance obligations (let alone operational administrative expenses).  The financing of premiums permits the estates to spread these insurance costs over several months.  In light of their desire to pay the insurance premiums for the Policies in installments, the Trustee/Moon Debtors have determined, in their sound business judgment, that it is in the best interest of their estates and creditors to finance the payment of the premiums for the Policies as set forth herein.

**BASIS FOR RELIEF**

21.    Section 364(c) of the Bankruptcy Code provides that the Court, after notice and a

hearing, may authorize a trustee to obtain credit or incur debt with priority over any and all

administrative expenses or secured by a lien on property of the estate that is not otherwise

subject to a lien or secured by a junior lien on property of the estate that is subject to a lien if the

estates are unable to obtain unsecured credit allowable as an administrative expense.  11 U.S.C. §

364(c).  The Trustee/Moon Debtors cannot obtain any source of unsecured premium financing in

connection with the premiums due under the Policies.  And the Moon Debtors' lenders, namely

the Primary Lenders and the DIP Lender, as aware of the terms of the PFA.

22.    Securing and/or maintaining the insurance provided under the Policies is essential

to the Moon Debtors' operations, and to protecting the Moon Debtors' estates and creditors in

the event of any loss or damage to their property.  Insurance also safeguards against any liability

for injuries or damages that may arise postpetition with respect thereto.  Pursuant to their

business judgment, the Trustee/Moon Debtors strongly believe that the satisfaction of the

premiums for the Policies by way of single, up-front, lump sum payments would be highly

disadvantageous to their estates.  Moreover, as noted above, the estates lack the financial

wherewithal to make such single, up-front payment at this time.

23.    To secure and maintain the insurance coverage provided under the Policies, the

Trustee/Moon Debtors need Court authority to enter into the PFA.  The monthly payment

arrangements set forth in the PFA will greatly minimize the cash strain placed upon the estates

by their insurance costs.  Additionally, the Trustee/Moon Debtors believe that the interest rate

contained in the PFA provides the most favorable financing terms that in light of their current circumstances.

24.    Accordingly, financing the premium payments due under the Policies pursuant to the terms of the PFA is in the best interest of the Moon Debtors' estates and their creditors.

## **WAIVER OF BANKRUPTCY RULE 6004**

25.    To implement the foregoing successfully and ensure the Moon Debtors' insurance coverage is effected, the Trustee/Moon Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the ten-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

## **NOTICE**

26.    A copy of the Motion will be served on the following parties: (a) the Office of the United States Trustee; (b) counsel to the Primary Lenders and the DIP Lender; (c) those persons who have requested notice pursuant to Bankruptcy Rule 2002; and (d) FIRST.  The Trustee respectfully, submits that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of Page Left Blank Intentionally]*

WHEREFORE, the Trustee respectfully requests that the Court enter an order, substantially in the form attached hereto, authorizing the Trustee/Moon Debtors to enter into the PFA with FIRST, approving the terms and conditions set forth in the PFAs, and granting such other and further relief as the Court deems just and proper.

Dated: March 18, 2022
Wilmington, Delaware

**ASHBY & GEDDES, P.A.**

*/s/  Ricardo Palacio*
Ricardo Palacio (DE Bar No. 3765)
Gregory A. Taylor (DE Bar No. 4008)
500 Delaware Avenue, 8th Floor
Wilmington, Delaware 19899-1150
Tel: (302) 654-1888
Fax: (302) 654-2067
Email:  RPalacio@ashbygeddes.com
        GTaylor@ashbygeddes.com

*(Proposed) Counsel to Don A. Beskrone,*
*Chapter 7 Trustee to Moon Group, Inc., et al.*
*and Chapter 11 Trustee of Moon Nurseries, Inc.*